UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS SNIDER, et al.,         ]
                               ]
    Plaintiff(s),               ]
                               ]
vs.                            ]    CV-00-N-1745-S
                               ]
WILLIAM SHELNUTT, Individually ]
as Chief of Security for Jefferson ]
State Community College; JUDY   ]
MERRITT, Individually as President ]
of Jefferson State Community    ]
College; R. L. DRENNEN,         ]
Individually as Dean of Business ]
Operations for Jefferson State  ]
Community College,              ]
                               ]
    Defendant(s).               ]

ENTERED

JUN 2 7 2001

**Memorandum of Opinion**

### I.  Introduction

The plaintiffs, Thomas Snider ("Snider"), John Ponder ("Ponder"), Tommy Diltz ("Diltz") and Benny Gilcrest ("Gilcrest"), bring this action against defendants William Shelnutt ("Shelnutt"), Judy Merritt ("Merritt") and R.L. Drennen ("Drennen"), by which they seek redress under 42 U.S.C. § 1983 for alleged violations of certain federal rights, as well as the laws of the state of Alabama.  The court has for consideration the motion of defendants Merritt and Drennen to dismiss all claims against them, filed on January 22, 2001 (Doc. #24).  Upon due consideration, the motion will be granted in all respects.

## II. Standard for Decision

A Rule 12(b)(6) motion tests the legal sufficiency of the Complaint. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997). The court may dismiss a complaint under that rule only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of ruling on a 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations of the complaint. Moreover, it views them in a light most favorable to the non-moving party. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Burch v. Apalachee Community Mental Health Servs.*, 840 F.2d 797, 798 (11th Cir. 1988) (en banc).

The court's review, however, is circumscribed by the heightened pleading requirements in this circuit for § 1983 actions against public officials in their individual capacities. As noted by the Eleventh Circuit in *GJR Investments*, "while Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing [his] complaint, this circuit, along with others, has tightened the application of Rule 8, with respect to § 1983 cases in order to weed out non-meritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." 132 F.3d at 1367. Therefore, in resolving defendants' motion to dismiss, the court is guided by both the 12(b)(6) standard and the heightened pleading requirement.

## III. Allegations of the Complaint

Defendants Merritt and Drennen are, respectively, President of Jefferson State Community College and Dean of Business Operations for Jefferson State Community

2

College. (*Complaint* at ¶¶ 7-8). Defendant Shelnutt was, at the time of the events made the basis of this action, the Chief of Security for Jefferson State Community College. (*Id.* at ¶ 6). As Chief of Security, defendant Shelnutt was supervisor of the plaintiffs and final policy and decision maker for the Security Department. (*Id.* at ¶ 13). According to plaintiffs, "[f]rom 1983 until July 1998, Shelnutt made constant, rude, crude and sexual remarks and gestures to Plaintiffs and other male employees in the Security Department" and "constantly touched Plaintiffs and other male employees in the Security Department in a sexually inappropriate manner." (*Id.* at ¶¶ 14-15). With respect to defendants Merritt and Drennen, plaintiffs contend that they either knew or should have known of the constant, severe and pervasive conduct and were duty bound to correct and/or prevent such behavior. (*Id.* at ¶ 17). As a result of the defendants' alleged actions and/or inactions, plaintiffs purportedly suffered, and continue to suffer, humiliation, embarrassment, and mental and emotional distress. (*Complaint* at ¶ 20).

## IV.   Discussion

### A.   § 1983 - Individual Capacity Claims

Defendants Merritt and Drennen contend that the individual capacity claims asserted against them are due to be dismissed because plaintiffs have failed to: (1) state a claim upon which relief can be granted; (2) satisfy the heightened pleading standard applicable in § 1983 individual capacity lawsuits; and (3) overcome the defense of qualified immunity. The court will assume, for purposes of evaluating the defense of qualified immunity, that

plaintiffs have stated a cognizable constitutional claim.[1] Having made that assumption, the court is thoroughly convinced that principles of qualified immunity indeed operate to bar plaintiffs' § 1983 claim.[2]

Qualified immunity shields government officials performing discretionary functions[3] if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998). The defense embodies an "objective reasonableness" standard, giving a government official the benefit of the doubt unless his or her actions were so obviously illegal in light of then existing law that only the "plainly incompetent" would have committed them. *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion, for ever like-situated,

---

[1] To obtain relief under 42 U.S.C. § 1983, a plaintiff must allege the deprivation of a right secured under the Constitution or federal law, and demonstrate that the alleged deprivation occurred under "color of state law." 42 U.S.C. § 1983; *Motes v. Myers*, 810 F.2d 1055, 1058 (11th Cir. 1987). Although it is well settled that the theories of respondeat superior and vicarious liability may not be utilized in civil rights actions brought pursuant to § 1983, *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a supervisory official may be held liable in a § 1983 action if there was a *causal relationship* between the conduct of such supervisory official and the alleged constitutional deprivation. *Braddy v. Florida Dept. of Labor & Empl. Sec.*, 133 F.3d 797, 801 (11th Cir. 1998).

[2] The plaintiffs have pled their § 1983 claim with sufficient particularity so as to afford this court an opportunity to evaluate the defense of qualified immunity. For instance, in paragraphs 14 and 15 of the complaint, the plaintiffs articulate, in graphic detail, specific instances of inappropriate sexual conduct on the part of their supervisor, defendant Shelnutt. Likewise, in paragraphs 16, 17 and 18 of the complaint, the plaintiffs allege that defendants Merritt and Drennen had actual or constructive knowledge of the constant, pervasive and severe harassment and, as such, were duty bound to correct and/or enact policies to prevent such harassment from continuing. The defendants' failure to do so, the plaintiffs contend, proximately resulted in the constitutional deprivations of which they complain.

[3] The plaintiffs concede that defendants Merritt and Drennen were acting within their discretionary authority when they allegedly failed to correct/prevent Shelnutt's behavior. (Plaintiffs' Response at p. 4).

reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*" *Lassiter v. Alabama A & M Univ. Bd. Of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994) (emphasis in original).

When qualified immunity is sought in the context of a Rule 12(b)(6) motion to dismiss, the motion should be granted "only if the complaint fails to allege facts that would show a violation of a clearly established constitutional right." *Kyle K. v. Chapman*, 208 F.3d 940, 941 (11th Cir. 2000). A "clearly established" constitutional right is one that has been recognized by the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in certain circumstances, the Supreme Court of Alabama. *See Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir. 1991).

In the present action, the plaintiffs have asserted that their supervisor sexually harassed them on a constant basis and, despite knowledge of the harassment and a duty to correct/prevent such behavior, defendants Merritt and Drennen failed to take remedial action. Although the Supreme Court and the Eleventh Circuit have long since recognized that the equal protection clause embodies a clearly established federal constitutional right to be free from intentional discrimination on the basis of gender, *Davis v. Passman*, 442 U.S. 228, 234-235, 99 S. Ct. 2264, 2271-72, 60 L. Ed. 2d 846 (1979); *Nicholson v. Georiga Dep't. of Human Resources*, 918 F.2d 145, 148 (11th Cir. 1990), the question presently before this court is whether it was clearly established, at the time of the events giving rise to the plaintiffs' claims, that *same-sex* sexual harassment in the form of a hostile work environment is also violative of plaintiff's federal rights.

At the outset, it should be noted that plaintiffs have failed to cite, and this court has yet to locate, a decision by *any* court recognizing a claim under the equal protection clause for same-sex sexual harassment. Although a number of district courts in this circuit, including this one, have addressed the viability of a same-sex sexual harassment action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Eleventh Circuit has visited the issue on only one occasion. *See Fredette v. BVP Mgmt. Assocs.*, 112 F.3d 1503 (11th Cir. 1997). In *Fredette*, the Eleventh Circuit held that sexual harassment of a male employee by a *homosexual* male supervisor, whether properly classified as *quid pro quo* or hostile work environment harassment, is actionable under Title VII. *Id.* at 1509.

Roughly one year later, in *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201, the Supreme Court weighed in on the issue. The question presented in *Oncale*, according to Justice Scalia, was "whether workplace harassment can violate Title VII's prohibition against 'discriminat[ion] . . . because of . . . sex,' 42 U.S.C. § 2000e-2(a)(1), when the harasser and the harassed employee are of the same sex." *Id.* at 76. After taking exception to the "bewildering variety of stances" taken by federal courts when presented with a same-sex hostile work environment claim, the Court concluded that same-sex sexual harassment is indeed actionable under Title VII. In reaching this conclusion, the Court relied heavily upon the statutory language of Title VII. The Court reasoned:

> We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some

6

> courts have observed, male-on-male sexual harassment in the work place was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits "discriminat[ion] . . . because of . . . sex" in the "terms" or "conditions" of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements.

*Id.* at 79.

Based on the decisions in *Fredette* and *Oncale*, respectively, it is abundantly clear that Title VII -- a statute designed to eliminate discrimination in the workplace -- provides a *statutory right* to be free from same-sex sexual harassment. However, the existence of a statutory right, a right borne out of principles of statutory interpretation, does not necessarily compel the conclusion that the protection afforded by the Equal Protection Clause against intentional sex discrimination also extends to acts of harassment by persons of the same gender as the plaintiff-employee. Again, even if such a claim is cognizable, it is certainly not "clearly established" for purposes of defeating the defense of qualified immunity. That being the case, the individual capacity claims against Merritt and Drennen will be dismissed with prejudice.

### B. § 1983 - Official Capacity Claims

Defendants Merritt and Drennen also seek dismissal of plaintiffs' claims for injunctive and declaratory relief. The motion to dismiss these claims is intriguing given that plaintiffs' amended complaint clearly waives the official capacity claims previously asserted against

defendants Merritt and Drennen.[4] (Doc. # 8). For this reason alone, the motion to dismiss is due to be granted. Nevertheless, given that references to injunctive and declaratory remedies linger in plaintiffs' demand for relief, and given that the parties have fully briefed the issue, the court provides the following additional reason why plaintiffs' claims for injunctive and declaratory relief must fail.

When federal rights are asserted against state employees sued in their official capacities, the Eleventh Amendment prohibits claims for retrospective monetary relief paid from the state treasury. *See Carr*, 916 F.2d at 1524. However, the Eleventh Amendment does not insulate state officials acting in their official capacities from suit for prospective declaratory and injunctive relief to remedy violations of federal constitutional law. *See Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) (holding that plaintiff seeking prospective relief from that state must name as a defendant a state official rather than the state or state agency directly even though in reality the suit is against the state). Accordingly, defendant Merritt,[5] in her official capacity, is not protected by injunctive or declaratory relief by the Eleventh Amendment. Nevertheless, the defendants argue, and the court agrees, that plaintiffs lack standing to pursue those claims.

---

[4] In the style of their state court complaint, filed on May 24, 2000, the plaintiffs bring suit against defendants Merritt and Drennen individually and as agents, servants and employees of Jefferson State Community College. Similarly, in paragraph 19 of their state court complaint, the plaintiffs assert that "[t]he Defendants, acting under color of the laws of the State of Alabama, both individually and in their official capacities as agents, servants and employees of Jefferson State Community College, violated Plaintiff's clearly established civil right to Equal Protection, as set out in the Fifth and Fourteenth Amendments to the United States Constitution." After this action was removed to federal court, rather than responding to defendants' first motion to dismiss (Doc. #4), the plaintiffs amended the complaint to delete all claims against Jefferson State Community College as well as all official capacity claims against defendants Merritt and Drennen. (Doc. # 8, Amended Complaint at ¶ 19).

[5] Because defendant Drennen has retired from service with Jefferson State Community College, the plaintiffs have voluntarily dismissed all claims for injunctive/declaratory relief against defendant Drennen. (Plfs' response at ¶ 2).

According to the Eleventh Circuit in *Cone Corp. v. Florida Dep't. of Transp.*, 921 F.2d 1190, 1203-04 (11th Cir. 1991), where a plaintiff seeks declaratory and injunctive relief, he or she must demonstrate: (1) a likelihood of future injury; (2) a likelihood that the defendant(s) will cause the anticipated injury; and (3) that the relief plaintiff seeks will likely prevent such injury from occurring. *Cone Corp*, 921 F.2d at 1204-1205. With respect to the first requirement, "[t]he plaintiff must present 'specific, concrete facts' showing that the challenged conduct will result in a 'demonstrable, particularized injury' to the plaintiff so that the plaintiff 'personally w[ill] benefit in a tangible way' from court action. *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 508, 95 S. Ct. 2197, 2210 (1975)). As to the second requirement, the plaintiff must establish a "'fairly traceable' nexus between the threatened deprivation of the constitutional right and the action of the defendant." *Id*. (citing *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 41-42, 96 S. Ct. 1917, 1924-26 (1976); *Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 3325 (1984)).

Here, it is undisputed that defendant Shelnutt's employment with Jefferson State Community College was terminated in July of 1998. (Complaint at ¶ 14). It is further undisputed that the termination of Shelnutt's employment also brought an end to his alleged same-sex sexual harassment. (*Id*.). In light of Shelnutt's absence, there is no evidence to suggest a real or immediate threat that the plaintiffs would again be subjected to same-sex sexual harassment in the form of a hostile work environment. The fact that roughly three years have elapsed since the alleged incidents, and similar incidents have apparently not recurred, speaks for itself. The plaintiffs' request for injunctive and declaratory relief will be dismissed as a matter of law.

## V.   Conclusion

The motion of defendants Merritt and Drennen to dismiss all claims asserted against them will be granted by an appropriate order in conformity with this memorandum of opinion.

Done, this 27th of June, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE